Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/27/2023 09:04 AM CST

TIMOTHY L. ASHFORD, PC LLO, AND
TIMOTHY L. ASHFORD, APPELLANTS,
v. ROSES ROSES, APPELLEE.

TIMOTHY L. ASHFORD, PC LLO, AND
TIMOTHY L. ASHFORD, APPELLANTS,
v. ANDREA TATE, APPELLEE.

___ N.W.2d ___

Filed January 27, 2023.    Nos. S-21-807, S-21-808.

1. **Judges: Recusal.** A recusal motion is initially addressed to the discretion of the judge to whom the motion is directed.
2. ____: ____. A judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.
3. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
4. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
5. **Limitations of Actions.** If the facts in a case are undisputed, the issue as to when the statute of limitations begins to run is a question of law.
6. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.
7. **Pretrial Procedure: Appeal and Error.** Generally, the control of discovery is a matter for judicial discretion, and decisions regarding

discovery will be upheld on appeal in the absence of an abuse of discretion.

8. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

9. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.

10. **Judicial Notice: Appeal and Error.** Judicial notice may be taken at any stage of a proceeding, including on appeal.

11. **Trial: Evidence: Records: Appeal and Error.** Generally, it is not the function of an appellate court to review evidence that was not presented to the trial court. A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered.

12. **Judges: Recusal.** The Nebraska Revised Code of Judicial Conduct states that a judge shall recuse himself or herself from any proceeding in which the judge's impartiality might reasonably be questioned, including when the judge has a personal bias or prejudice concerning a party or a party's lawyer.

13. ____: ____. To demonstrate that a trial judge should have recused himself or herself, the moving party must show that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.

14. **Judges: Recusal: Presumptions.** One seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality.

15. **Limitations of Actions: Dismissal and Nonsuit.** Neb. Rev. Stat. § 25-217 (Cum. Supp. 2022) is self-executing, so that an action is dismissed by operation of law, without any action by either the defendant or the court, as to any defendant who is named in the civil action and not served with process within the time set forth in the statute.

16. **Limitations of Actions: Dismissal and Nonsuit: Jurisdiction.** After dismissal of a civil action by operation of law under Neb. Rev. Stat. § 25-217 (Cum. Supp. 2022), there is no longer an action pending and the district court has no jurisdiction to make any further orders except to formalize the dismissal.

17. **Limitations of Actions: Libel and Slander.** The limitations period in Neb. Rev. Stat. § 25-208 (Reissue 2016) commences upon the publication of the defamatory matter which forms the basis of the action.

18. **Actions: Libel and Slander.** Generally, under the single publication rule, any communication that is made at approximately one time—such

as a television broadcast or a single edition of a book, newspaper, or periodical—is construed as a single publication of the statements it contains, and gives rise to only one cause of action which accrues as of the moment of the initial publication, no matter how many copies are later distributed.

19. **Libel and Slander: Legislature.** By enacting Neb. Rev. Stat. § 20-209 (Reissue 2022), the Legislature codified the single publication rule in Nebraska.

20. **Actions: Libel and Slander: Time: Damages.** Under Nebraska's single publication rule, there is just one cause of action for tort damages founded upon a single publication, and that cause of action accrues at the moment of the initial publication.

21. **Statutes: Appeal and Error.** Statutory language must be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

22. **Statutes: Legislature: Intent.** When construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

23. **Statutes: Intent.** A court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.

24. **Statutes: Words and Phrases.** Generally, words grouped in a list within a statute should be given related meaning.

25. **Libel and Slander.** Nebraska's single publication rule, as codified in Neb. Rev. Stat. § 20-209 (Reissue 2022), applies to internet postings and publications.

26. **Records: Appeal and Error.** It is incumbent on the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding those errors.

27. **Appeal and Error.** To be considered by an appellate court, the party asserting an alleged error must both specifically assign and specifically argue it in the party's initial brief.

28. ____. Where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, the appellant fails to satisfy the requirement that the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief.

29. **Pleadings: Appeal and Error.** An appellate court reviews de novo a lower court's dismissal of a complaint for failure to state a claim.

30. **Disciplinary Proceedings.** Under Neb. Ct. R. § 3-322, reports of alleged attorney misconduct and grievances submitted to the Nebraska Supreme Court's Counsel for Discipline are absolutely privileged and no lawsuit predicated thereon may be instituted.

Appeals from the District Court for Douglas County: W. Russell Bowie III, Judge. Affirmed.

William R. Harris for appellants.

Michael J. Decker for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

An attorney filed two separate lawsuits alleging that he and his law firm were defamed by a negative review posted on the law firm's Google business page. The district court granted summary judgment in favor of the defendants and dismissed both lawsuits. On appeal, the attorney assigns multiple errors, including that the district court erred in relying on the single publication rule to determine when the defamation claim accrued. We moved these appeals to our docket primarily to address that issue.

We conclude the district court properly applied the single publication rule, and we find no merit to the remaining assignments of error. We therefore affirm the judgments of the district court.

## I. BACKGROUND

Timothy L. Ashford is an attorney in Omaha, Nebraska, and his law practice is Timothy L. Ashford PC LLO (collectively Ashford). Ashford was hired by Antonio Tate to represent him regarding a personal injury claim arising from a 2016 automobile collision. Antonio and his minor children were injured in another collision in 2017, and Ashford was retained to represent them on those personal injury claims too. Both

Antonio and his wife, Andrea Tate, communicated with Ashford regarding the representation.

In November 2018, Ashford emailed Antonio and Andrea to inform them he was ending his representation. At that point, none of the claims arising from the collisions had been resolved. Ashford provided Antonio and Andrea with notice of attorney liens totaling approximately $5,900.

## 1. Letter

In response to Ashford's email, Andrea sent Ashford a letter dated December 13, 2018. Several of Ashford's claims are based on Andrea's letter, so we describe it in some detail.

The letter stated that Antonio and Andrea were surprised by Ashford's decision to terminate his representation; they tried to contact him for an explanation and to obtain their case files, but received no response. The letter continued:

> Antonio and I understand that you should be compensated for any billable hours spent on Antonio's case(s), and we are in complete agreement to do exactly that. However, we also know that we have a right to request an accounting (summary) of your billable hours spent, per activity [in] both case(s).

The letter stated that to "mitigate any concerns of false billing" and to "reach an amicable agreement" on fees, Ashford should cancel his attorney liens and provide Antonio and Andrea with certain documentation regarding his fees. The letter requested copies of the case files relating to the claims against both drunk drivers, an itemized summary of Ashford's billable hours, copies of any letters Ashford sent to insurance companies, documentation of the liens, and copies of all other correspondence related to the injury claims.

The letter continued: "[P]lease be advised that this letter serves as formal notice of our intent to file grievance(s) with the following entities . . . if our requests are not complied with by your office no later than end of business (5PM) on January 10, 2019." The letter listed several entities with whom

grievances would be filed, including the State of Nebraska Attorney Grievance Commission, the Nebraska Supreme Court's Counsel for Discipline, and the Nebraska State Bar Association. The letter also stated that Andrea would "be providing reviews and comments to all other relevant sites regarding our experience with you." The letter included Andrea's email address.

## 2. Grievance

In March 2019, the Counsel for Discipline received an email with an attached grievance letter pertaining to Ashford. The name "Andrea D. Tate" appeared on the signature line of the grievance letter. The email described the attached letter as "my formal written grievance" and generally read as though both the email and the attached grievance letter had been authored by Andrea. But the email was sent from an account with the username "Roses Roses," and it was copied to "ANDREA TATE - Niece" at the email address Andrea had listed in her December 13 letter to Ashford. Counsel for Discipline sent a copy of the grievance to Ashford and requested a response. Our appellate record does not disclose the current status of this grievance.

## 3. Google Review

On March 20, 2019, Roses Roses posted a review on Ashford's Google business page that stated, in its entirety, "If you're looking for a disheveled, unorganized, unreliable attorney with questionable ethics he's your man . . . ."

On May 9, 2019, Ashford sent a letter to Andrea demanding that she "immediately remove the unsubstantiated review posted by Roses Roses aka Andrea Tate to the Timothy Ashford Google Business Review." Ashford's letter included a draft complaint and indicated he would file the complaint and "seek damages for the defamatory statement" if the post was not immediately removed.

On May 17, 2019, Andrea responded to Ashford's letter using the same email account she had previously given him.

Andrea's email advised Ashford that she had not posted a Google review of either Ashford or his business.

### 4. Lawsuits

Ashford ultimately filed two lawsuits in the district court for Douglas County premised on the Google review—one lawsuit was filed in 2019 and the other was filed in 2020. Both lawsuits were assigned to the same district court judge. As relevant to the issues raised on appeal, we set out the procedural history of both lawsuits.

### (a) 2019 Lawsuit

On December 11, 2019, Ashford filed a complaint against Andrea; Roses Roses; "John Does, 1-100"; and "Jane Does, 1-100." The complaint specifically alleged that "Defendant Andrea Tate is Defendant Roses Roses," and it broadly alleged the defendants "published false and defamatory statements" concerning Ashford to the Counsel for Discipline and on the internet in a Google business review. Ashford's complaint sought money damages and injunctive relief for claims he styled as libel/defamation, false light, intentional infliction of emotional distress, unauthorized practice of law, and extortion.

Using certified mail, summons and a copy of the complaint were sent to "Andrea Tate" and "Roses Roses c/o Andrea Tate" at the same Omaha address. Both certified mail receipts were signed on December 12, 2021, by "Coranna Thompson." Our appellate record does not tell us anything about this person or her relationship, if any, to the named defendants. Thereafter, only Andrea entered an appearance in the case.

### (i) PreAnswer Motions

In February 2020, Andrea filed a motion to dismiss the complaint. Shortly thereafter, Ashford filed a motion for default judgment against Roses Roses and a motion to recuse the trial judge. The court held a consolidated hearing on all three motions. That hearing was not included in our appellate

record, but we can glean some information from the court's March 2020 order ruling on the motions.

Andrea's motion to dismiss was brought pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6) and asserted that none of the claims in Ashford's complaint stated a claim upon which relief could be granted. The district court sustained that motion in part, dismissing the claims asserting intentional infliction of emotional distress, unauthorized practice of law, and extortion. It overruled the motion as to the remaining claims, allowing the claims of libel/defamation and false light to proceed.

Ashford's motion for default judgment against Roses Roses asserted that he perfected service on this defendant when "Coranna Thompson" signed the certified mail receipt directed to "Roses Roses c/o Andrea Tate." A hearing was held on the motion, but as stated, it was not included in our appellate record.

The court overruled the motion for default judgment, citing a general failure of proof. The court's order indicated Ashford had argued that "Andrea Tate and Roses Roses are one and the same person." But Ashford had offered "no evidence that [Roses Roses] is the same person as Andrea Tate, who has entered an appearance, or that [Roses Roses] ever received notice of the lawsuit." Alternatively, the court found there was "no evidence that [Roses Roses] is a real person."

In a separate motion, Ashford moved to recuse the district court judge. The motion to recuse was not included in our appellate record. But the order denying the motion recites that Ashford sought recusal of the presiding judge because Ashford had sued the judge and others in a 2017 federal court lawsuit alleging racial discrimination in the process used in Douglas County to appoint lawyers for indigent criminal defendants. In denying Ashford's motion to recuse, the judge reasoned the federal lawsuit had been dismissed in 2018 for lack of jurisdiction,[1] and there was "no reason to recuse on these facts."

---

[1] See *Ashford v. Douglas County*, 880 F.3d 990 (8th Cir. 2018).

### (ii) Second Motion for Default Judgment
### and Order of Dismissal

In June 2020, Ashford filed another motion for default judgment against Roses Roses. This motion recited that notice of the lawsuit had been published in a legal newspaper on three consecutive dates, that Roses Roses had failed to answer, and that she was therefore in default. A hearing was held on this motion, but it was not included in our appellate record.

In August 2020, the district court entered an order overruling the second motion for default judgment. In the same order, the court formalized dismissal of the action as against Roses Roses and all Doe defendants pursuant to Neb. Rev. Stat. § 25-217 (Cum. Supp. 2022). The court's order noted that although Ashford had purported to serve these defendants by publication, he had not followed the statutory procedure for doing so. The court thus found the action stood dismissed without prejudice as to Roses Roses and the Doe defendants because they had not been properly served within the time prescribed by § 25-217 and had not entered a voluntary appearance.

### (iii) Amended Complaint

In October 2020, Ashford filed an amended complaint naming Andrea as the only defendant. The amended complaint alleged that Andrea either authored the March 20, 2019, Google review or directed Roses Roses to do so. As relevant to the issues in this appeal, Ashford's amended complaint alleged claims styled as libel/defamation and false light. Andrea's answer to the amended complaint generally denied liability for these claims and affirmatively alleged that Andrea "is not the person identified as Roses Roses."

### (b) 2020 Lawsuit

In August 2020, shortly after the district court dismissed the 2019 lawsuit against Roses Roses without prejudice for failure to perfect service under § 25-217, Ashford filed a new

lawsuit against Roses Roses; "John Does, 1-100"; and "Jane Does, 1-100." The 2020 complaint alleged these defendants had "published false and defamatory statements concerning [Ashford] on the internet Google Business Review." It alleged the defamatory statements were published at an "unknown time and as recent[ly] as August 31, 2020." The 2020 complaint alleged claims styled as libel/defamation, false light, and intentional infliction of emotional distress.

Ashford filed a motion for substitute service, supported by an affidavit stating, "I am unable to serve Roses Roses with a Summons and Complaint or by certified mail because her identity cannot be ascertained and Roses Roses can not be located." The district court granted the motion for substitute service; Ashford thereafter published notice for three consecutive weeks.

Roses Roses filed an answer alleging her actual name is Rose Thompson, and she is a resident of Texas. For ease of reference, this opinion will use "Thompson" when referring collectively to Roses Roses and Rose Thompson. Thompson's answer denied liability for the various claims and alleged several affirmative defenses, including that the complaint failed to state a claim upon which relief can be granted and the claims were barred by the statute of limitations.

## 5. Summary Judgment Motions

In July 2021, Andrea moved for summary judgment in the 2019 lawsuit and Thompson moved for summary judgment in the 2020 lawsuit. One week later, Ashford moved for summary judgment in the 2020 lawsuit only. A consolidated hearing was held on the competing summary judgment motions.

The undisputed evidence adduced at the summary judgment hearings established Thompson is Andrea's aunt and they have a close relationship. Thompson helped Andrea draft the grievance letter to the Counsel for Discipline, and the grievance was emailed from Thompson's personal email account. The alias Thompson uses with that account is "Roses Roses."

In Thompson's affidavit, she admitted to writing and posting the Google business review of Ashford on March 20, 2019, as Roses Roses. Thompson averred that Andrea had never been given access to her email or permission to post things on the internet using Thompson's name, alias, or email. Thompson also denied consulting with Andrea before posting the Google review. Thompson's affidavit included a copy of the full Google review she posted on March 20, as well as a lengthy response to that review that Ashford posted nearly 2 years later.

Andrea, in her affidavit, denied writing or posting the Google review and denied any knowledge of the review before it was posted by Roses Roses. She also denied ever using the alias "Roses Roses" or the email address associated with Thompson.

The court ruled on the competing summary judgment motions in separate orders entered on October 1, 2021. In addressing Andrea's summary judgment motion, the court considered only those claims that survived the court's earlier ruling on the motion to dismiss: the libel/defamation and false light claims. The court noted those claims were based exclusively on the unfavorable Google review, and it found the evidence was undisputed that Thompson, and not Andrea, had written and posted that review. Concluding there was no evidence that Andrea was responsible for the allegedly defamatory Google review, the court granted Andrea's motion for summary judgment and dismissed the 2019 lawsuit against her with prejudice.

In ruling on Thompson's summary judgment motion, the court first addressed whether the libel/defamation claim was time barred under Nebraska's 1-year statute of limitations.[2] The court found that Ashford's false light claim was "subsumed within the claim for libel," and it addressed those claims together. It found the claims were based on a single

---

[2] Neb. Rev. Stat. § 25-208 (Reissue 2016).

unfavorable Google review, and the evidence was undisputed that Thompson posted that review to the internet on March 20, 2019. Ashford did not dispute this date, but he argued his claims were not time barred because "each time a user views the unfavorable review on Google, there is a new publication, and the statute of limitations period begins anew."

The court rejected that argument, which it characterized as advocating for application of a "multiple publication rule." It instead applied the "single publication rule," which it described as a rule under which "any mass communication that is made at approximately one time . . . is construed as a single publication of the statements it contains, thereby giving rise to only one cause of action as of the moment of the initial publication, no matter how many copies are later distributed." The district court noted the Nebraska Supreme Court had not yet addressed whether the single publication rule applies to internet publications in libel actions, but the Seventh Circuit Court of Appeals, in an opinion collecting cases on the issue, stated that "[e]very state court that has considered the question applies the single-publication rule to information online."[3] After citing and discussing cases from other state and federal courts,[4] the district court concluded "nearly all the courts across the country have unanimously applied the single-publication rule, [and] it is likely that Nebraska would do the same."

Applying that rule, the court found that publication of the unfavorable Google review occurred on the date it was

---

[3] *Pippen v. NBCUniversal Media, LLC,* 734 F.3d 610, 615 (7th Cir. 2013).

[4] See, *In re Philadelphia Newspapers, LLC*, 690 F.3d 161 (3d Cir. 2012); *Van Buskirk v. The New York Times Co*., 325 F.3d 87 (2d Cir. 2003); *Lane v. Strang Communications Co*., 297 F. Supp. 2d 897 (N.D. Miss. 2003); *T.S. v. Plain Dealer*, 194 Ohio App. 3d 30, 954 N.E.2d 213 (2011); *Ladd v. Uecker*, 323 Wis. 2d 798, 780 N.W.2d 216 (Wis. App. 2010); *Kaufman v. Islamic Soc. of Arlington*, 291 S.W.3d 130 (Tex. App. 2009); *Woodhull v. Meinel*, 145 N.M. 533, 202 P.3d 126 (N.M. App. 2008); *Churchhill v. State*, 378 N.J. Super. 471, 876 A.2d 311 (2005); *Firth v. State*, 98 N.Y.2d 365, 775 N.E.2d 463, 747 N.Y.S.2d 69 (2002).

originally posted to the internet—March 20, 2019. Because Ashford's defamation action against Thompson was not filed until August 2020, the court concluded it was time barred.

The court also entered summary judgment on Ashford's claim of intentional infliction of emotional distress. On the evidence adduced, it found the undisputed facts were not sufficient, as a matter of law, to support recovery on such a claim because Thompson's conduct in posting the Google review was not sufficiently extreme or outrageous.[5] The court therefore entered an order granting summary judgment in favor of Thompson in the 2020 lawsuit and dismissing it with prejudice. In the same order, the court overruled Ashford's motion for summary judgment, and any other pending motions.

### 6. Appeals and Consolidation

Ashford timely appealed from the court's orders granting summary judgment in favor of Andrea and Thompson. We consolidated the appeals and moved them to our docket, primarily to address the applicability of the single publication rule to allegedly defamatory internet publications.

## II. ASSIGNMENTS OF ERROR

Ashford filed an identical brief in both consolidated appeals. These briefs assert 98 assignments of error that we consolidate into 8: Ashford asserts, restated, that the district court erred in (1) denying his motion to recuse the trial judge, (2) overruling his motion for default judgment against Roses Roses and dismissing Roses Roses from the 2019 lawsuit for lack of service, (3) granting Thompson's motion for summary judgment based on the single publication rule, (4) ruling on the motions for summary judgment without proper notice, (5) failing to find that Andrea impermissibly changed

---

[5] See *Brandon v. County of Richardson*, 261 Neb. 636, 624 N.W.2d 604 (2001) (holding it is for court to determine, in first instance, whether defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery).

her testimony to support her motion for summary judgment, (6) dismissing Ashford's claim of intentional infliction of emotion distress against Thompson, (7) denying several motions to compel discovery without first holding a hearing, and (8) dismissing Ashford's claim of "civil extortion" against Andrea.

## III. STANDARD OF REVIEW

[1,2] A recusal motion is initially addressed to the discretion of the judge to whom the motion is directed.[6] A judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.[7]

[3,4] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[8] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[9]

[5,6] If the facts in a case are undisputed, the issue as to when the statute of limitations begins to run is a question of law.[10] When reviewing questions of law, an appellate court

---

[6] *Thompson v. Millard Pub. Sch. Dist. No. 17*, 302 Neb. 70, 921 N.W.2d 589 (2019).

[7] *Id.*

[8] *In re Estate of Lakin*, 310 Neb. 271, 965 N.W.2d 365 (2021), *modified on denial of rehearing* 310 Neb. 389, 966 N.W.2d 268.

[9] *Id.*

[10] *Dutton-Lainson Co. v. Continental Ins. Co.*, 271 Neb. 810, 716 N.W.2d 87 (2006).

has an obligation to resolve the questions independently of the conclusion reached by the trial court.[11]

[7,8] Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.[12] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[13]

[9] A district court's grant of a motion to dismiss is reviewed de novo.[14]

## IV. ANALYSIS

[10] Before we consider Ashford's assignments of error, we first address the "Motion to Take Judicial Notice" he filed shortly after oral argument before this court. Although judicial notice may be taken at any stage of a proceeding, including on appeal,[15] we overrule Ashford's motion.

Ashford's motion asks this court to take judicial notice of numerous district court filings which appear in our appellate record and several affidavits which appear nowhere in our record. He generally contends the affidavits support his argument that the trial judge should have recused himself based on a conflict of interest. The affidavits, which were attached to Ashford's motion, show they were executed in July and August 2022, while this case was pending on appeal. There is no indication these affidavits were offered into evidence at any stage of the proceedings before the trial court. As such,

---

[11] *Id.*

[12] *Eletech, Inc. v. Conveyance Consulting Group*, 308 Neb. 733, 956 N.W.2d 692 (2021).

[13] *Id*.

[14] *Main St Properties v. City of Bellevue*, 310 Neb. 669, 968 N.W.2d 625 (2022).

[15] *Hagelstein v. Swift-Eckrich*, 257 Neb. 312, 597 N.W.2d 394 (1999).

Ashford's motion for judicial notice is nothing more than an improper attempt to expand the appellate record.

[11] Generally, it is not the function of an appellate court to review evidence that was not presented to the trial court.[16] A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered.[17]

We conclude that none of the affidavits attached to Ashford's motion may properly be judicially noticed,[18] and we soundly reject his attempt to expand the appellate record with evidence not considered by the trial court. And, to the extent Ashford's motion also asks us to take judicial notice of several district court filings in the cases under consideration,[19] we conclude it is unnecessary to do so because the documents are already part of our appellate record. We therefore overrule Ashford's motion for judicial notice and strike the attachments thereto.

### 1. No Error Related to
### Motion to Recuse

[12-14] Ashford argues the trial judge erred in failing to recuse himself in the 2019 lawsuit. The Nebraska Revised

---

[16] *Heineman v. Evangelical Luth. Good Sam. Soc.*, 300 Neb. 187, 912 N.W.2d 751 (2018) (rejecting appellee's request to take judicial notice of adjudicative facts outside appellate record).

[17] *Id*.

[18] See Neb. Rev. Stat. § 27-201 (Reissue 2016) (judicially noticed fact must be generally known within territorial jurisdiction of trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned).

[19] See, *Pennfield Oil Co. v. Winstrom*, 276 Neb. 123, 132, 752 N.W.2d 588, 598 (2008) (holding in "interwoven and interdependent cases," appellate court may examine its own records and take judicial notice of proceedings and judgment in former action involving one of the parties); *State v. Norwood*, 203 Neb. 201, 204, 277 N.W.2d 709, 711 (1979) (noting court may "take judicial notice of its own records in the case under consideration").

Code of Judicial Conduct states that a judge shall recuse himself or herself from any proceeding in which the judge's impartiality might reasonably be questioned, including when the judge has a personal bias or prejudice concerning a party or a party's lawyer.[20] To demonstrate that a trial judge should have recused himself or herself, the moving party must show that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.[21] One seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality.[22]

On this record, Ashford has not overcome the presumption of judicial impartiality. As we read the district court's order, the only ground Ashford asserted for recusal was that he had previously sued the trial judge in a federal lawsuit challenging the appointment process for criminal defense counsel in Douglas County. Because that lawsuit had been resolved several years earlier on procedural grounds and was no longer pending, the judge found there was no reason to recuse himself. On this record, we cannot find the judge abused his discretion. Ashford does not direct us to any evidence suggesting the trial judge was biased against him as a result of the prior litigation,[23] and we see nothing that would cause a reasonable person who knew the circumstances of the federal lawsuit to question the judge's impartiality to preside over an unrelated matter involving Ashford several years later.

---

[20] See Neb. Rev. Code of Judicial Conduct § 5-302.11(A)(1).

[21] *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022); *State v. Collins*, 283 Neb. 854, 812 N.W.2d 285 (2012).

[22] See *id.*

[23] See, e.g., *Tierney v. Four H Land Co.*, 281 Neb. 658, 798 N.W.2d 586 (2011) (holding abuse of discretion for trial judge not to recuse himself when he admitted personal bias against attorney handling case due to attorney's participation in pending judicial qualification proceedings against another judge).

Nor are we persuaded by Ashford's argument that the trial judge was required to recuse himself based on this court's reasoning in another case involving Ashford—*State v. Rice.*[24] In *Rice*, Ashford appealed from a district court order denying his application for attorney fees after serving as court-appointed counsel in a postconviction matter. We reversed the judgment and remanded the matter for further proceedings on the fee application. In doing so, we noted the postconviction judge was a named defendant in a then-pending federal lawsuit filed by Ashford. In light of that circumstance, we stated it was "prudent"[25] that upon remand, Ashford's application for fees should be assigned to a different judge.

Our reasoning in *Rice* does not support Ashford's contention that it was an abuse of discretion for the trial judge here to deny Ashford's motion to recuse. It is true that the trial judge in *Rice*, like the trial judge in the instant appeals, was one of the Douglas County judges sued by Ashford in the federal lawsuit challenging the process by which attorneys were appointed to represent indigent criminal defendants in Douglas County. But *Rice* did not involve a motion to recuse, nor did *Rice* imply that a judge must recuse himself or herself as a matter of course anytime the case involves a lawyer or party who has previously sued the judge. To the contrary, *Rice* simply noted there was a pending lawsuit between Ashford and the trial judge assigned to the matter and concluded it would be prudent on remand to reassign the matter to a different judge.

When Ashford moved for recusal in the instant case, the federal lawsuit involving the trial judge was no longer pending. We reject Ashford's contention that our reasoning in *Rice* necessarily required the trial judge here to recuse himself from presiding over any future case involving Ashford.

---

[24] *State v. Rice*, 295 Neb. 241, 888 N.W.2d 159 (2016).

[25] *Id*. at 253, 888 N.W.2d at 169.

On this record, Ashford has not met the heavy burden of overcoming the presumption of judicial impartiality. We find no abuse of discretion in denying the motion to recuse.

## 2. No Error Related to Dismissal
## of Roses Roses

Ashford contends it was error for the district court to enter an order formalizing the dismissal of the 2019 action as against Roses Roses pursuant to § 25-217. That statute provides:

(1) An action is commenced on the day the complaint is filed with the court.

(2) Each defendant in the action must be properly served within one hundred eighty days of the commencement of the action. . . .

(3) If any defendant is not properly served within the time specified by subsection (2) of this section then the action against that defendant is dismissed by operation of law. The dismissal is without prejudice and becomes effective on the day after the time for service expires.[26]

[15,16] Section 25-217 is self-executing, so that an action is dismissed by operation of law, without any action by either the defendant or the court, as to any defendant who is named in the civil action and not served with process within the time set forth in the statute.[27] And after dismissal of a civil action by operation of law under § 25-217, there is no longer an action pending and the district court has no jurisdiction to make any further orders except to formalize the dismissal.[28]

Ashford argues that instead of dismissing the 2019 action as against Roses Roses under § 25-217, the court should have found she was properly served but failed to answer, and thus granted his motions for default judgment against her. We disagree.

---

[26] § 25-217.

[27] *Childs v. Frakes*, 312 Neb. 925, 981 N.W.2d 598 (2022).

[28] *Id*.

The record shows that initially, Ashford attempted service by certified mail on "Roses Roses c/o Andrea Tate" at an Omaha address, and the certified mail receipt was signed by "Coranna Thompson." On appeal, Ashford contends, "It is reasonable to believe that Coranna Thompson apprised . . . Roses Roses of the complaint."[29] But he adduced no evidence to support this contention, and the record does not disclose the relationship, if any, of Coranna Thompson to either Roses Roses or Andrea. And even though it was Ashford's contention, at that time, that Andrea and Roses Roses were the same person, he offered no evidence to support that theory either.

Later, Ashford attempted service on Roses Roses by publication, but the court found that he failed to comply with the proper procedure for service by publication.[30] Ashford directs us to nothing in the record suggesting otherwise. The court did not err in finding Roses Roses was not properly served.

Nor did the court err in formalizing the dismissal of Roses Roses under § 25-217. Indeed, on this record, the court did not have jurisdiction to do anything other than formalize the dismissal as against this defendant. The 2019 lawsuit was commenced on December 11, 2019, and the record contains no evidence that Ashford properly served Roses Roses within the 180-day period set forth in § 25-217. The action therefore stood dismissed as a matter of law as against Roses Roses. This assignment has no merit.

### 3. Single Publication Rule Properly Applied

[17] Ashford argues the district court erred in granting summary judgment in favor of Thompson on the defamation and false light claims. The district court found these claims

---

[29] Brief for appellant at 31.

[30] See Neb. Rev. Stat. § 25-517.02 (Reissue 2016) (authorizing service by publication "[u]pon motion and showing by affidavit that service cannot be made with reasonable diligence by any other method provided by statute . . .").

were barred by the applicable statute of limitations in § 25-208, under which actions for libel or slander must be brought "[w]ithin one year." Our cases hold that the limitations period in § 25-208 "commences to run upon [the] publication of the defamatory matter which forms the basis of the action."[31]

As stated, Ashford does not dispute that the Google review was first posted on March 20, 2019. But before the district court, and on appeal to this court, he argues the unfavorable Google review should be treated as a "continuing tort,"[32] with a new limitations period accruing each day the review remains posted on the internet. The district court rejected this argument, reasoning that courts across the country unanimously apply the single-publication rule to internet publications and predicting "it is likely that Nebraska would do the same."

We have not directly addressed whether a single publication rule or a multiple publication/continuing tort rule applies to Nebraska defamation claims. This case thus presents two issues of first impression: Does Nebraska follow the single publication rule? And if so, does the rule apply to internet postings? Before addressing these issues, we provide some historical context for the single publication rule.

### (a) Historical Overview of Single Publication Rule

[18] At common law, each delivery of a libelous statement to a third party was generally considered a new publication giving rise to a new cause of action.[33] But as mass publishing

---

[31] *Patterson v. Renstrom*, 188 Neb. 78, 79, 195 N.W.2d 193, 194 (1972). See, also, *Tennyson v. Werthman*, 167 Neb. 208, 211, 92 N.W.2d 559, 561 (1958) (holding action for libel must be commenced within 1 year of "publication of the defamatory matter").

[32] Brief for appellant at 41.

[33] See, e.g., *Duke of Brunswick v. Harmer*, 117 Eng. Rep. 75, 14 Q.B. 185 (1849) (permitting cause of action for each copy of newspaper printed with libelous statement).

became more common, the single publication rule developed.[34] Under this rule, any communication that is made at approximately one time—such as a television broadcast or a single edition of a book, newspaper, or periodical—is construed as a single publication of the statements it contains, and gives rise to only one cause of action which accrues as of the moment of the initial publication, no matter how many copies are later distributed.[35]

The Restatement (Second) of Torts describes the single publication rule as a rule "applied in cases where the same communication is heard at the same time by two or more persons."[36] The Restatement explains that the rule is justified by the necessity of protecting defendants and the courts from the numerous suits that might be brought for the same words if each person reached by such a large-scale communication could serve as the foundation for a new action.[37] According to the Restatement, the "great majority of the states now follow 'the single publication rule.'"[38] The Restatement also recognizes that the "Uniform Single Publication Act, promulgated in 1952," effectively codified the single publication rule.[39]

### (b) Nebraska Follows Single Publication Rule

In 1979, the Nebraska Legislature adopted § 1 of the 1952 version of the Uniform Single Publication Act, which

---

[34] See Sapna Kumar, *Website Libel and the Single Publication Rule*, 70 U. Chi. L. Rev. 639 (2003).

[35] *Clark v. Viacom Intern. Inc*., 617 Fed. Appx. 495 (6th Cir. 2015). See, also, *T.S., supra* note 4, 194 Ohio App. 3d at 32, 954 N.E.2d at 214 (holding under single publication rule, "'right to file suit on a cause of action for libel accrues upon the first publication of the matter complained of'").

[36] Restatement (Second) of Torts § 577A, comment *b*. at 209 (1977).

[37] *Id*., comment *c*.

[38] *Id.*, § 577A, Reporter's Note at 445.

[39] See *id.* at 446.

it codified at Neb. Rev. Stat. § 20-209 (Reissue 2022). That statute provides:

> No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication, exhibition, or utterance, such as any one issue of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions.

[19,20] This court has referenced § 20-209 several times since its enactment, but we have not expressly construed or applied it.[40] We do so now, and hold that by enacting § 20-209, the Legislature codified the single publication rule in Nebraska. And under that rule, there is just one cause of action for tort damages founded upon a single publication,[41] and that cause of action accrues at the moment of the initial publication.[42]

(c) Nebraska's Single Publication Rule
Applies to Internet Publications

Next, we consider whether Nebraska's single publication rule, as codified in § 20-209, applies to internet publications.

---

[40] See *Lewis v. Craig*, 236 Neb. 602, 463 N.W.2d 318 (1990) (superseded by statute on other grounds as stated in *Mann v. Mann*, 312 Neb. 275, 978 N.W.2d 606 (2022); citing, but not discussing, § 20-209). See, also, *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927, 857 N.W.2d 816 (2015) (holding, without referencing § 20-209, that where plaintiff asserts claims of both libel and false light invasion of privacy based on same publication, false light claim is subsumed within defamation claim and is not separately actionable). But see *Bojanski v. Foley*, 18 Neb. App. 929, 943, 798 N.W.2d 134, 146 (2011) (construing § 20-209 to prevent "multiple recoveries from a single publication" but not to force plaintiff, at pleading stage, to "elect among libel, slander, and invasion of privacy with respect to the claim a plaintiff advances resulting from a single publication").

[41] See § 20-209.

[42] See *Clark, supra* note 35. See, also, *T.S., supra* note 4.

This requires statutory interpretation, and we apply familiar principles.

[21-23] Statutory language must be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[43] When construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[44] A court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.[45]

[24] Section 20-209 does not expressly reference internet publications, presumably because they did not exist when the statute was enacted. But when the statute references a "single publication, exhibition, or utterance," it includes a list of publications "such as any one issue of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture."[46] The term "such as" preceding the list in § 20-209 is akin to the term "including," which we have held connotes that the list is not exhaustive and suggests there are other items includable although not specifically enumerated.[47] Similarly, words grouped in a list within a statute should be given related meaning.[48]

---

[43] *Echo Group v. Tradesmen Internat.*, 312 Neb. 729, 980 N.W.2d 869 (2022).

[44] *Id.*

[45] *Id*.

[46] § 20-209.

[47] See *State v. Jedlicka*, 305 Neb. 52, 938 N.W.2d 854 (2020).

[48] *Id*.

For purposes of the single publication rule, we see no meaningful distinction between a single posting on the internet; a single issue of a newspaper, magazine, or book; or a single broadcast over the radio or television. Each is a mass publication that can be viewed or heard simultaneously by multiple people. As we explain, other courts agree with this reasoning, and we think such reasoning best achieves the purpose of § 20-209.

In *Firth v. State*,[49] the New York Court of Appeals held that internet publications should be treated the same as publications made through traditional mass media, reasoning that websites "resemble [publications] contained in traditional mass media, only on a far grander scale." The *Firth* court also explained that applying a multiple publication rule to internet postings would result in endless retriggering of the statute of limitations, which could have a negative effect on the open and pervasive dissemination of information and ideas. Other state courts have articulated similar rationales and reached the same conclusion.[50]

Likewise, federal courts have universally embraced applying the single publication rule to defamation actions based on internet postings or publications.[51] As the Seventh Circuit Court of Appeals explained in *Pippen v. NBCUniversal Media, LLC*:[52] "The theme of [all the] decisions is that excluding the Internet from the single-publication rule would

---

[49] *Firth, supra* note 4, 98 N.Y.2d at 370, 775 N.E.2d at 465, 747 N.Y.S.2d at 71.

[50] See, e.g., *Glassdoor, Inc. v. Andra Group, LP*, 575 S.W.3d 523 (Tex. 2019); *Ladd, supra* note 4; *Kaufman, supra* note 4; *Woodhull, supra* note 4; *Traditional Cat Assn., Inc. v. Gilbreath*, 118 Cal. App. 4th 392, 13 Cal. Rptr. 3d 353 (2004).

[51] See, e.g., *Pippen, supra* note 3; *In re Philadelphia Newspapers, LLC, supra* note 4; *Van Buskirk, supra* note 4; *Sears v. Russell Road Food and Beverage, LLC*, 460 F. Supp. 3d 1065 (D. Nev. 2020); *Norkin v. The Florida Bar*, 311 F. Supp. 3d 1299 (S.D. Fla. 2018); *Lane, supra* note 4.

[52] *Pippen, supra* note 3, 734 F.3d at 615.

eviscerate the statute of limitations and expose online publishers to potentially limitless liability."

[25] Based on the foregoing, we hold that Nebraska's single publication rule, as codified in § 20-209, applies to internet postings and publications. We thus agree with the district court that the unfavorable Google review posted on March 20, 2019, was a single publication under § 20-209 and that Ashford could not allege "more than one cause of action for damages for libel or slander or invasion of privacy or any other tort"[53] founded on that single publication.

Ashford's single cause of action accrued on March 20, 2019, the date Roses Roses first posted the Google review. Thus, by the time Ashford filed the defamation action against Roses Roses in August 2020, it was time barred. The district court properly dismissed it on that basis.

### 4. Assigned Errors Relating to Summary Judgment

Ashford assigns various procedural and substantive errors pertaining to the entry of summary judgment in favor of Andrea and Thompson. We address these arguments in turn and conclude none have merit.

### (a) Alleged Procedural Errors

Ashford argues that the trial court committed three procedural errors when it ruled on the motions for summary judgment. First, he argues the court improperly "converted" another motion into a motion for summary judgment without giving him proper notice. Next, he argues that he filed motions to compel discovery while the summary judgment motions were pending and he contends that the court should have ruled on those discovery disputes before it decided the summary judgment motions. And finally, he argues the court erred in overruling his motions to compel discovery without first holding

---

[53] § 20-209.

a hearing. Some additional background is necessary to understand these arguments.

On July 30, 2021, the court held a consolidated hearing on the competing motions for summary judgment. Before the July 30 hearing, Andrea and Thompson filed an index of evidence listing 6 summary judgment exhibits, and Ashford filed an index of evidence listing 19 summary judgment exhibits. The court took up Andrea's motion for summary judgment first. Andrea offered, and the court received, six exhibits in support of the motion. When it was Ashford's turn to offer evidence, his counsel informed the court he had "filed a motion for continuance." The court responded: "Did you tell anybody about that? Like the bailiff? You didn't, did you?" Ashford's counsel responded, "No." Ashford's counsel then offered 19 exhibits, one of which was an affidavit from Ashford. The court received only the first two pages of Ashford's affidavit as evidence in support of the motion to continue. In those two pages, Ashford stated he needed a continuance to obtain pertinent discovery, including the depositions of Andrea and Thompson. Our record shows the court continued the summary judgment hearing to September 1.

After securing the continuance, Ashford noticed a deposition of Thompson to be held in Omaha on August 25, 2021. Pursuant to that notice, Thompson traveled from her home in Texas to attend the deposition in Omaha. When Ashford canceled Thompson's deposition shortly before it was to be held, Thompson filed a motion for discovery sanctions seeking reimbursement for her travel expenses. Thompson's motion included a notice setting the matter for hearing on September 1.

On August 23, 2021, Ashford filed motions to compel discovery in the 2020 action against Thompson, generally challenging the sufficiency of her previous responses to interrogatories, requests for production, and requests for admission. These motions to compel did not include a notice of hearing. On August 30, Ashford filed a motion to compel

discovery in the 2019 action against Andrea, claiming she had provided "evasive" answers to discovery. This motion to compel contained a notice of hearing setting the matter for September 1.

At the hearing on September 1, 2021, Ashford made no reference to either of his recently filed motions to compel. Instead, Ashford's counsel informed the court that he thought the only matter to be taken up that day was Thompson's motion for discovery sanctions. Ashford told the court he thought the continued hearing on the summary judgment motions was set for September 3. After checking with the bailiff, the judge confirmed, on the record, that the September 1 hearing was scheduled to address the continued motions for summary judgment, as well as Thompson's motion for discovery sanctions.

The motion for discovery sanctions was taken up first, and eventually was overruled. Ashford then made an oral motion to continue the summary judgment hearing again, stating he wanted to offer additional evidence. He did not identify or describe such evidence or explain how it would impact the summary judgment motions. The court denied Ashford's request for another continuance and instead proceeded with the hearing on the summary judgment motions.

In support of Andrea's and Thompson's motions for summary judgment, the court received the same six exhibits offered by Andrea at the prior summary judgment hearing. The court also received into evidence, for purposes of summary judgment, the same 19 exhibits previously offered by Ashford to support his requested continuance. Additional exhibits were offered by all parties and received into evidence, after which the court took the motions for summary judgment under advisement.

Our appellate record does not show that a hearing was ever held on Ashford's motions to compel discovery. However, the record shows those motions were effectively overruled by language in the court's October 1, 2021, orders granting summary judgment in favor of Andrea and Thompson,

which expressly stated "any Motions filed and not ruled on are denied."

### (i) No Improper Conversion of Motion

Ashford argues the district court erred when, at the hearing on September 1, 2021, it "received evidence which converted a motion hearing into a motion for summary judgment without giving [Ashford] notice of the changed status of the motion and a reasonable opportunity to present all material made pertinent to such a motion by the rules governing summary judgment."[54] In support of this argument, Ashford cites to Nebraska cases applying the court rule that governs when a court receives evidence on a motion under § 6-1112(b)(6) and thus treats the motion as one for summary judgment.[55] But that rule has no application here.

Neither the July 30, 2021, hearing nor the September 1 hearing were set to address a motion under § 6-1112(b)(6). Instead, our record shows that both hearings were set to address motions for summary judgment. It is true that during the September 1 hearing, Ashford expressed confusion over what was to be taken up that day; he told the court he believed the summary judgment motions had been continued to September 3. But there is nothing in our record supporting this belief. And when Ashford asked, during the September 1 hearing, to continue the summary judgment hearing again, he did not raise insufficient notice as the reason.

[26] It is incumbent on the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding

---

[54] Brief for appellant at 22.

[55] See, e.g., *Britton v. City of Crawford*, 282 Neb. 374, 380, 803 N.W.2d 508, 514 (2011) (internal quotation marks omitted) (applying Neb. Ct. R. Pldg. § 6-1112 and holding that when trial court receives evidence that converts motion to dismiss into motion for summary judgment, it must give parties "notice of the changed status of the motion" and "reasonable opportunity to present all material made pertinent to such a motion by statute").

those errors.[56] Here, the record shows the September 1, 2021, hearing was merely a continuation of the previously set summary judgment hearing. We reject Ashford's contention that the court somehow "converted" the September 1 hearing into a summary judgment hearing without notice.

Nor does the record support Ashford's suggestion that he was denied a reasonable opportunity to present evidence on the summary judgment motions. To the contrary, our record shows that in addition to the 19 exhibits he offered at the July 30, 2021, hearing and offered again at the September 1 hearing, Ashford introduced several more exhibits into evidence at the September 1 hearing; all were received. And to the extent Ashford's appellate briefing can be construed to argue that the court's refusal to grant another continuance prevented him from offering additional evidence in opposition to summary judgment, Ashford neither described such evidence nor made an offer of proof in the district court. He has thus failed to preserve such an argument for appellate review.[57]

On this record, we reject Ashford's arguments that he was not given adequate notice of the continued summary judgment hearing and that he was denied a reasonable opportunity to present additional evidence pertaining to the motions for summary judgment.

### (ii) No Error on Motions to Compel

Ashford argues the district court erred by ruling on the summary judgment motions before it ruled on his motions to compel discovery. He also argues the court erred in denying his motions to compel without first holding a hearing. We address these arguments together, and reject them both.

---

[56] *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013).

[57] See *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018) (argument that court erroneously prevented appellant from offering certain rebuttal evidence was not preserved for appellate review because no offer of proof was made regarding excluded evidence).

Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.[58] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[59]

Ashford is correct that no hearings were held on his motions to compel, but he has not shown that was due to any judicial error. Instead, it is explained by the fact that Ashford failed to include any notice of hearing on two of the three motions to compel, despite the applicable local rule.[60] And although one of Ashford's motions to compel did include a hearing notice setting the matter for September 1, 2021, the record shows that when Ashford appeared on that date he did not, at any point, ask to take the matter up. To the contrary, he told the court he believed the only matter set for hearing on that date was Thompson's motion for discovery sanctions.

On this record, we cannot find that the court abused its discretion in failing to hold a hearing on Ashford's motions to compel discovery or in ruling on the pending summary judgment motions before ruling on the motions to compel. These assignments are without merit.

### (b) Alleged Substantive Errors

#### (i) No Error in Relying on Andrea's Affidavit

Ashford assigns and argues that the court erred in granting summary judgment in favor of Andrea in the 2019 lawsuit, because, in doing so, it relied on Andrea's undisputed

---

[58] *Eletech, Inc., supra* note 12.

[59] *Id.*

[60] See Rules of Dist. Ct. of Fourth Jud. Dist. 4-2(B) (rev. 2022) (providing that when filing pretrial motion which requires hearing, party must obtain hearing date from judge or judge's staff and must timely serve notice of hearing on opposing party).

affidavit testimony stating she was not the person who posted the Google review. According to Ashford, Andrea changed her testimony on this issue to meet the exigencies of the litigation. We disagree.

Ashford relies on the proposition that where a party—without reasonable explanation—testifies to facts materially different concerning a vital issue, the change clearly being made to meet the exigencies of pending litigation, such evidence is discredited as a matter of law and should be disregarded.[61] We have said that in applying this rule, the important considerations are that the testimony pertains to a vital point, that it is clearly apparent the party has made the change to meet the exigencies of the pending case, and that there is no rational or sufficient explanation for the change in testimony.[62]

Ashford notes that in Andrea's affidavit dated July 14, 2021, she stated that she had never posted a Google review of a business and that she did not post the Google review at issue. He contends this statement is materially different from the intent Andrea expressed in her letter of December 13, 2018, where she said that if an agreement could not be reached on fees she would be "providing reviews and comments to all other relevant sites regarding our experience with you." According to Ashford, this reflects a material change in Andrea's testimony on a vital point and there is no rational or sufficient explanation for the change. As such, he argues the court should have discredited Andrea's affidavit testimony. And he claims that without the affidavit testimony, there was a material issue of fact as to who authored the Google review that prevented summary judgment in Andrea's favor.

We do not address whether the letter and affidavit are materially different, because Ashford's argument fails for a different reason: Andrea's letter was not "testimony." Pursuant to Neb. Rev. Stat. § 25-1240 (Reissue 2016), "The testimony of

---

[61] See, e.g., *Riggs v. Nickel*, 281 Neb. 249, 796 N.W.2d 181 (2011).

[62] *Id*.

witnesses may be taken in four modes: (1) By affidavit; (2) by deposition; (3) by oral examination; and (4) by videotape of an examination conducted prior to the time of trial for use at trial in accordance with procedures provided by law."

Because Andrea's unsworn letter was not testimony of any sort, it cannot support Ashford's claim that she materially changed her testimony on the issue of who authored and posted the Google review. The district court did not abuse its discretion in relying on Andrea's affidavit testimony.

### (ii) Intentional Infliction of Emotional Distress

Ashford also assigns that the district court erred in granting summary judgment in favor of Thompson on his claim of intentional infliction of emotional distress. Regarding this assignment, the only argument presented in Ashford's initial brief states:

> The court erred in denying the intentional infliction of emotional distress claim because the court denied [Ashford's] Motion for Summary Judgment which prevented [Ashford] from introducing evidence of the intentional infliction of emotional distress. . . . The court must reverse the denial of the dismissal of the intentional infliction of emotional distress.[63]

[27,28] To be considered by an appellate court, the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief.[64] Where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, the appellant fails to satisfy the requirement that the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief.[65]

---

[63] Brief for appellant at 46.

[64] *Baker-Heser v. State*, 309 Neb. 979, 963 N.W.2d 59 (2021).

[65] *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022); *State v. Chase*, 310 Neb. 160, 964 N.W.2d 254 (2021).

Because Ashford's appellate briefing regarding this assigned error is conclusory and lacks coherent analysis, we do not consider this assignment.

### 5. No Error in Dismissing
### Extortion Claim

Finally, Ashford argues the trial court "erred in dismissing the civil extortion claim"[66] against Andrea. Ashford contends the factual basis for this claim was the letter that Andrea wrote to Ashford on December 13, 2018. That letter asked Ashford to cancel his attorney liens and to provide certain documents from his case file so the parties could "reach an amicable agreement" on Ashford's attorney fees. The letter also stated that if Ashford did not comply with these requests, Andrea would file attorney grievances with several entities, including the Nebraska Supreme Court's Counsel for Discipline.

Ashford characterizes this letter as "a Michael Avenatti style attempt to extort an attorney."[67] And he argues, without citing to any Nebraska authority recognizing a civil cause of action in tort for extortion, that the district court erred when it dismissed this claim in response to Andrea's motion under § 6-1112(b)(6).

[29] An appellate court reviews de novo a lower court's dismissal of a complaint for failure to state a claim.[68] Our de novo review reveals no error in dismissing Ashford's extortion claim.

This case does not require that we address whether there is any plausible legal basis for alleging a tort of civil extortion in Nebraska. That is so because, as we explain, Ashford cannot institute a claim of any sort premised on the grievance filed with the Counsel for Discipline.

---

[66] Brief for appellant at 25.

[67] *Id*. at 26.

[68] *Millennium Laboratories v. Ward*, 289 Neb. 718, 857 N.W.2d 304 (2014).

[30] Under Neb. Ct. R. § 3-322, reports of alleged attorney misconduct and grievances submitted to the Counsel for Discipline are "absolutely privileged and no lawsuit predicated thereon may be instituted." Based on this rule, we held in *State ex rel. Counsel for Discipline v. Wright*[69] that it was misconduct for an attorney to threaten to sue someone for filing a grievance with the Counsel for Discipline. In that case, the attorney claimed his former employees were threatening to defame him and "extort" money from him by filing a grievance with the Counsel for Discipline.[70] We found clear and convincing evidence of misconduct when the attorney wrote a letter threatening to sue the employees if they submitted a grievance.

Ashford's "civil extortion" claim sought to recover damages based on Andrea's letter expressing her intent to report alleged attorney misconduct to the Counsel for Discipline. Because reports of alleged attorney misconduct and grievances are absolutely privileged and no lawsuit may be predicated on such a report, it was not error for the district court to dismiss Ashford's extortion claim for failure to state a claim on which relief can be granted. This assignment of error is meritless.

### V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court in both actions.

AFFIRMED.

---

[69] *State ex rel. Counsel for Dis. v. Wright*, 277 Neb. 709, 764 N.W.2d 874 (2009).

[70] *Id.* at 725, 764 N.W.2d at 887.