IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ZAPATA V. CEDERBURG

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JOHN L. ZAPATA, APPELLEE,

V.

KATIE CEDERBURG, APPELLANT.

Filed April 1, 2025.    No. A-24-320.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Tiernan T. Siems and Sarah K. Scholten, of Erickson | Sederstrom, P.C., for appellant.

Jeffery R. Kirkpatrick, of Governmental Law, L.L.C., for appellee.

RIEDMANN, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Katie Cederburg (Cederburg) appeals from the Lancaster County District Court's order granting summary judgment in favor of her father, John L. Zapata, as to the counterclaim she brought against him. Zapata filed a complaint against Cederburg for replevin, forgery, and conversion, alleging that she forged his signature on the title of his 2001 Chevrolet Corvette, unlawfully retitled the vehicle in her name, and was in wrongful possession of it. Cederburg filed a counterclaim, alleging "Abuse of Process/Malicious Prosecution" and "Slander/Defamation." Approximately 8 months after filing his complaint, Zapata voluntarily dismissed it and then moved for summary judgment on Cederburg's counterclaim. The district court granted summary judgment in his favor and dismissed Cederburg's counterclaim. Cederburg appeals. We affirm.

- 1 -

## II. BACKGROUND

This case involves a dispute regarding the alleged gifting of a 2001 Chevrolet Corvette from Zapata to his granddaughter, Madison Cederburg (Madison). Madison is Cederburg's daughter. Cederburg claimed Zapata signed the title to the vehicle over to Madison in October 2009. Zapata did not dispute that he intended to gift the vehicle to Madison when she was an adult, but he claimed he did not sign the title over to his granddaughter in 2009, as she would have been 2 years old at that time. He alleged that Cederburg forged his signature on the vehicle's title and later wrongfully took possession of it.

### 1. COMPLAINT AND COUNTERCLAIM

According to Zapata's complaint filed on November 22, 2022, he was informed on November 15 that Cederburg went to Zapata's storage unit where the Corvette was being stored, indicated that she had title to the vehicle, and drove off with it. Zapata claimed he did not sell the vehicle to Cederburg nor transfer title to her. He claimed Cederburg "forged Zapata's signature on the title and illegally re-titled the vehicle in her name." He asserted claims for replevin, forgery, and conversion.

In her "Answer and Counterclaim" filed on February 15, 2023, Cederburg admitted that Zapata did not sell the vehicle to her and did not transfer title to her, but she claimed that Zapata gifted the vehicle to Madison in 2009. Under "Affirmative Defenses," she asserted that Zapata "completed the gift of the [v]ehicle to Madison . . . by executing the title in favor of Madison . . . , which title was then recorded with the Sheridan County Department of Motor Vehicles." A "duplicate copy" of the title was attached.

In her counterclaim, Cederburg asserted an action for "Abuse of Process/Malicious Prosecution," alleging that because Zapata had a history of "using his material possessions to manipulate his children and grandchildren," she "saw to it that [Zapata] signed title to the [v]ehicle over to Madison . . . on October 23, 2009." She alleged, "In this manner, [Zapata] would be unable to use the [v]ehicle as a tool of manipulation thereafter." She claimed that after "signing title" "in favor of Madison," the title was recorded, and years thereafter, Zapata and Cederburg "became estranged due to [Zapata's] treatment of [Cederburg] and his conduct in general." She claimed that Zapata requested that she move the vehicle from storage to another location of her choosing. However, after she moved the vehicle, Zapata "then began taking the position that he still had ownership of the [v]ehicle." She alleged, "In support of his false allegation that he still owned the [v]ehicle, [Zapata] created a document, purportedly showing that he was the record owner of the [v]ehicle." She claimed that Zapata "contacted law enforcement, who appeared at [Cederburg's] house, asked to speak with Madison . . . and then left, after learning the truth surrounding the transfer of title." Cederburg claimed that Zapata's lawsuit was filed "for improper purposes" to: punish her for refusing to give him access to her children and for leaving her employment in "the business in which [Zapata] is a majority owner"; force her to incur "substantial legal fees"; "financially ruin" her; and "generally make things as tough on [her] as [he] was capable of doing through filing of frivolous litigation."

Also in her counterclaim, Cederburg alleged an action for "Slander/Defamation." She claimed Zapata "made defamatory and slanderous statements to third parties to the effect that [she]

has engaged in forgery of title" and theft of the vehicle. She alleged that these statements were "untrue."

## 2. MOTIONS

On June 14, 2023, Cederburg filed a motion to compel discovery responses. She alleged that on February 15, she served Zapata with interrogatories, requests for production of documents, and requests for admissions. She acknowledged that Zapata submitted responses to her requests for admissions on March 15, which were amended on March 17. However, she had not yet received responses to the remaining discovery. Following a hearing, the district court entered an order on July 10 granting Cederburg's motion and giving Zapata until July 21 to respond to the remaining discovery. Zapata was also ordered to pay Cederburg $1,500 for attorney fees.

On July 24, 2023, Zapata filed a "Notice of Voluntary Dismissal of Complaint Without Prejudice." An order dismissing the complaint was entered on August 1. On September 18, an order was entered scheduling the case for a pretrial conference in November.

On September 22, 2023, Cederburg filed a "Motion for Order to Appear and Show Cause." She acknowledged receiving "supplemental discovery responses" from Zapata on July 21, however, she claimed the responses contained "little or no additional information and set forth responses that are known to be untrue." She attached a "transcript of a recorded conversation between the [p]arties conclusively establishing that [Zapata's] discovery responses have not been truthful." She sought an order directing Zapata to appear and show cause as to why he was not in contempt for failing to comply with the district court's July 10 order. An order was entered scheduling a hearing on the motion, however, service of the order on Zapata could not be effectuated. Cederburg's request for alternative service was overruled.

On October 24, 2023, Zapata filed a motion for summary judgment, requesting that the district court dismiss all of Cederburg's claims against him. Zapata filed an evidence index in support of summary judgment and a statement of undisputed facts. Cederburg filed a "Resistance to Motion for Summary Judgment" and an evidence index in opposition to summary judgment.

On January 10, 2024, Cederburg filed a second motion to compel. She acknowledged receiving Zapata's discovery responses following the order entered on July 10, 2023. However, she alleged that following the taking of Zapata's deposition in August, Cederburg's counsel "confronted [Zapata's] counsel with a recording and a transcript of that recording which contradicts" Zapata's discovery responses and his deposition testimony. She claimed that despite the "aforementioned communications," Zapata had still not "accurately supplemented his discovery responses."

A hearing on Cederburg's second motion to compel and Zapata's motion for summary judgment took place on January 17, 2024. The district court told the parties that it was going to take up Cederburg's motion to compel first. Cederburg was asked if she had any evidence to present on her motion; she offered exhibits 2 through 5, which were received subject to Zapata's objection that the court "take into account any hearsay contained" in the exhibits and "give it the appropriate weight." Cederburg's counsel asked the court if it needed physical copies of the exhibits, to which the court responded that "[t]hey're already in our electronic files," so it did not "need to duplicate those." Those exhibits consisted of the following: exhibit 2 (Zapata's "Supplemented Answers to [Cederburg's] Interrogatories (Set I)" and Zapata's responses to

Cederburg's requests for production of documents); exhibit 3 (Zapata's August 24, 2023, deposition); exhibit 4 (emails between the parties' counsel); and exhibit 5 (an unofficial "Transcript of Conversation Between [Cederburg] and [Zapata]," dated January 11, 2023). Exhibit 5, which Cederburg often references in her arguments on appeal, appears to be an unofficial transcription of a recorded conversation between the parties. That conversation initially related to business matters, but then Zapata brought up taking Cederburg to court because she took the car from the shop. They disputed who signed over the title, with Cederburg claiming it was transferred in Madison's name in 2009. She told Zapata that he "made the cops come to [her] house and talk to [her] 15-year-old and he was "not getting the car back." Zapata responded, "Well fine . . . I'll make you spend $15,000 on legal fees." There is also discussion about Cederburg "going into competition" against Zapata and a "shareholder dispute" and how Cederburg "cannot spend corporate funds." Zapata told Cederburg he was "going to put [her] out of business" and questioned why she kept "grandchildren from their granddad."

Zapata was asked whether he had any "evidence on the motion to compel," to which he offered exhibit 6 (Zapata's affidavit). That exhibit was received without objection. Zapata's affidavit averred that he filed the complaint against his daughter to regain ownership of the 2001 Corvette which "had been stored at [his] business and which [he] intended to gift to [his] granddaughter when she became an adult." He did not sign over the title to his "then two-year-old granddaughter, but that it was [Cederburg] who had written [his] name on the change of title."

In support of her motion, Cederburg's attorney argued, "We can't seem to reconcile the transcript of the conversation between . . . Zapata and . . . Cederburg and his discovery responses and deposition testimony, so we are requesting this Court grant a second motion to compel to order . . . Zapata to fully, accurately, and truthfully respond to our discovery requests under an order of contempt." The district court responded:

> So you're basically saying you think you know which one is the truth and which one isn't, and you want me to pick the one that's the truth, and make him say it is.
>
> Isn't that what a trial is for? Isn't that what -- isn't that what impeachment's for? I mean, I don't know -- I've never had this motion, in this way, presented to me. So I'm really trying very hard to figure out what it is you want me to compel.

The court suggested that "isn't that what discovery is about, and isn't that what things like impeachment and those sorts of things are for?" Cederburg's counsel agreed. After further discussion between the court and counsel about the motion, Cederburg's counsel stated, "[W]e just want truthful, accurate responses. And if they say . . . that's what we have, then, I guess . . . there's nothing more that we can ask for." The court stated that before overruling the motion, which was where it was "leaning," it would "look at everything" first to make sure it had it right.

The district court then asked if the parties were "[r]eady to proceed on the motion for summary judgment." Zapata's counsel responded "yes" and offered exhibit 1 into evidence, which the court received without objection. Exhibit 1 consisted of the affidavit of Zapata's counsel. It contained copies of the complaint, the answer and counterclaim, Zapata's notice of dismissal, the order of dismissal, and the cover page and page 6 of Cederburg's deposition. Page 6 of Cederburg's deposition reflected Cederburg's acknowledgement that she filed an answer and a counterclaim in

the case, and that she knew there were discussions about Zapata dismissing his complaint, but she did not know if that had been done "formally."

The district court then asked Cederburg's counsel, "[D]o you have any evidence that you wish to offer on the motion for summary judgment?" The following colloquy took place:

[Counsel for Cederburg]: Yes, Your Honor, in our index of evidence, I listed four documents in which I just ask the Court to take judicial notice of the complaint; the answer and counterclaim, and the supporting exhibits that were attached to that; the second motion to compel, and transcript that's attached to that; and [Zapata's] brief in support of their summary judgment motion.

THE COURT: Okay. So here's the problem . . . . [j]udicial notice means that it is in the file, not that the things that are said therein or attached thereto are true, just that they are there.

[Counsel for Cederburg]: Yes, Your Honor, they -- these are just documents that have all been previously filed, and we just referenced them in our brief.

THE COURT: Right, but if you are asking me to consider anything in them as a fact, I cannot do that under judicial notice.

[Counsel for Cederburg]: Okay.

[Counsel for Zapata]: Your Honor, in this case[,] I believe she is asking you to take judicial notice of documents that are in my exhibit. So that question, although appropriate, doesn't come up in this case, I don't believe, at least as far as the evidence, is that true?

THE COURT: Because you think that they are all contained in Exhibit 1?

[Counsel for Zapata]: I think so. At least the complaint and the answer and counterclaim are in there, and all of the attachments to [the] counterclaim are part of Exhibit 1.

[Counsel for Cederburg]: So, yes. So those two, and then we also just wanted to note the second motion to compel and transcript. All that we say in our brief is that that was filed . . . .

THE COURT: Okay. I just want to make sure that we're on the same wavelength here as to what is evidence and what is not.

[Counsel for Cederburg]: Yes.

THE COURT: So -- okay. So you're basically saying everything that's in his evidence you also want me to consider on the opposite way?

[Counsel for Cederburg]: Yes.

THE COURT: Briefs aren't evidence so --

[Counsel for Cederburg]: Right. I guess . . . my point in just listing it here was just for judicial notice, just because we referenced it and cited to it in our own brief, so maybe I didn't do that correctly.

THE COURT: I . . . don't think you're citing to it as evidence, are you?

[Counsel for Cederburg]: No. No, just referencing this is where we found this.

THE COURT: Okay. All right. So I will consider those things that have been filed under Exhibit 1. That has been received as evidence both ways. . . . Okay. Thank you for clarifying that.

. . . .

THE COURT: All right. Anything else -- any other evidence, then, [counsel]?
[Counsel for Cederburg]: No, Your Honor.

After hearing arguments from counsel, the court took Zapata's motion for summary judgment under advisement.

### 3. FINAL ORDER

On February 16, 2024, the district court entered an order granting summary judgment in favor of Zapata as to Cederburg's counterclaim and overruling Cederburg's second motion to compel. It ordered that the "case is dismissed" and "[e]ach party is to pay their own costs and fees."

The district court ruled that summary judgment was appropriate on Cederburg's malicious prosecution claim because there was not a bona fide termination in her favor, which was "one of the five required conjunctive elements" for such a claim. It reasoned, "[A] dismissal by Zapata of the underlying action in this case is not a termination in Cederburg's favor." A bona fide termination in Cederburg's favor would require an action being terminated on the merits and that she was innocent of any wrongdoing. The court noted that Cederburg conceded in her brief that this claim was not yet ripe for adjudication.

Regarding Cederburg's abuse of process claim, which requires both "the existence of an ulterior purpose" and "an act in the use of process not proper in the regular prosecution of the proceeding," the district court found no evidence in support of the first element. It stated, "[Cederburg] has produced no evidence beyond the bare pleadings[,] so there is no factual basis to find the existence of an ulterior purpose." For the second element, the court only identified three procedural acts by Zapata: the filing of his complaint, the filing to dismiss his complaint, and his motion for summary judgment. It held that none of these pleadings constituted an improper use of process and, therefore, the abuse of process claim "must be dismissed."

The district court relied on *Benes v. Matulka*, 182 Neb. 744, 157 N.W.2d 382 (1968), when addressing Cederburg's slander/defamation claim. In addition to malicious prosecution, the *Benes* court also held that slander cannot be brought as a counterclaim in the action that forms the basis for the claim. The district court in this case observed:

[T]he parallel between *Benes* and the instant case is striking. Zapata alleges that [Cederburg] converted the Corvette [and] [Cederburg] counterclaims that she has been slandered by Zapata. Under the reasoning of [*Benes*], the alleged theft and the alleged slander are two separate torts, and the counterclaim is not proper.

The district court also concluded that Cederburg failed to meet her burden of proof as the nonmoving party on the slander claim. It stated:

Assuming there was no evidence of forgery, a published allegation for forgery outside of judicial proceedings would be actionable for slander. However, Zapata's allegation was made *within* an action brought for replevin and is an integral part of that pleading. As such, it clearly falls within the privilege that attaches to statements made incident to judicial proceedings.

[Cederburg] could make the argument that her slander claim is based upon statements that Zapata made outside of the judicial proceedings. However, she would have the burden of proof for such a claim, and she has submitted no evidence to make a prima facie case for such a claim.

Finally, the district court overruled Cederburg's second motion to compel on the basis that there were "no remaining claims for which discovery [could] be ordered, much less compelled."

### 4. MOTION TO RECONSIDER

On February 26, 2024, Cederburg filed a motion to reconsider the district court's February 16 order, along with a supporting brief. In her brief, she took issue with the court's conclusion that she did not submit any evidence in support of the actions in her counterclaim. She refers to her index of evidence, which includes the transcript of the recorded conversation. A hearing on the motion was held on March 25. At the hearing, Cederburg's counsel argued that the abuse of process and slander claims should have withstood a motion for summary judgment, but if not, then "the order should be very clear that the dismissal is on the procedural basis only so that we can re-file and go from there." Cederburg was concerned that the court's order did not say that the dismissal was "without prejudice." She was also concerned that it did not say "it was on the procedural motion" and therefore it "appears as if it was on the merits of the case, which then would be with prejudice." Zapata's counsel agreed that "dismissal on procedural grounds is appropriate for all of the counts in this case."

The district court first informed the parties that "not once during the motion for summary judgment did anybody say it was limited to a procedural basis view by the Court." It added, "So when you filed this motion and have made this claim, I'll just tell you, I don't know where that came from. That's brand new to me." The court stated, "It was a motion for summary judgment, just like any other motion for summary judgment." It then told the parties that it "asked several times at the hearing" whether there was any evidence. It "got Exhibit 1 on the motion for summary judgment, and that's it. The rest of the exhibits were not offered on the motion for summary judgment." The court added,

So I know what you're talking about. You're talking about what was received as Exhibit 5 on the motion to compel. But Exhibit 5 on the motion to compel is not an affidavit, it's not a deposition. It's somebody's version of a transcript of something.

I don't really know what that is other than what was told to me related purely on the motion to compel. It was not -- we had two hearings that day, one on the motion to compel, and one on the motion for summary judgment.

So I did not consider Exhibit 5 on the motion for summary judgment because it was not offered for that purpose.

The district court entered an order on March 26, 2024, overruling Cederburg's motion to reconsider.

Cederburg appeals.

## III. ASSIGNMENTS OF ERROR

Cederburg assigns that the district court erred in (1) granting summary judgment in favor of Zapata "thereby dismissing [her] counterclaim for abuse of process/malicious prosecution and slander/defamation," and (2) overruling her second motion to compel and motion to reconsider.

## IV. STANDARD OF REVIEW

An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Woodward v. Saint Francis Med. Ctr.*, 316 Neb. 737, 6 N.W.3d 794 (2024). An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Id.*

Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion. *Timothy L. Ashford, PC LLO v. Roses*, 313 Neb. 302, 984 N.W.2d 596 (2023). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## V. ANALYSIS

### 1. SUMMARY JUDGMENT

Cederburg broadly assigns that the district court erred by granting summary judgment in favor of Zapata on her counterclaim. She makes two primary arguments in support of this alleged error. She claims that her evidence was "properly offered, marked, and received prior to the arguments on Zapata's [m]otion for [s]ummary [j]udgment; therefore, the [d]istrict [c]ourt failed to consider all the evidence when ruling on summary judgment." Brief for appellant at 22. She also claims that even if Zapata's exhibit 1 was the only evidence properly offered and received at the summary judgment hearing, he nevertheless failed to establish a prima facie case and therefore the "burden of proof never shifted from Zapata to Cederburg." *Id*. at 27.

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Clark v. Scheels All Sports*, 314 Neb. 49, 989 N.W.2d 39 (2023). The Nebraska Supreme Court has long held that the party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. *Id.* If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id*. But in the absence of a prima facie showing by the movant that he or she is entitled to summary judgment, the opposing party is not required to reveal evidence which he or she expects to produce at trial. *Id.*

- 8 -

(a) Evidence Received at Summary Judgment Hearing

Cederburg acknowledges that the Nebraska Supreme Court has held that unless an exhibit is marked, offered, and received, it does not become part of the record and cannot be considered as evidence in the case. See *Zannini v. Ameritrade Holding Corp.*, 266 Neb. 492, 667 N.W.2d 222 (2003) (in connection with motions for summary judgment, unless exhibit is marked, offered, and accepted, it does not become part of record and cannot be considered as evidence in case). Exhibits not offered, marked, and received by the trial judge at a summary judgment hearing may not be considered on appeal. See *id*.

In the present case, the only exhibit received at the hearing on Zapata's motion for summary judgment was exhibit 1. That exhibit was the affidavit of Zapata's counsel, which also included the attachments described earlier. None of those attachments included the transcript of the recorded conversation that forms the basis for Cederburg's argument that there were material issues of fact that should have precluded summary judgment. Cederburg contends that the district court "failed to delineate between the two motions in two parts of the [h]earing." Brief for appellant at 23. She argues that since both motions were heard during a single hearing, then "[a]ny evidence offered, marked, and received during either [m]otion, so long as it was during the [h]earing, should be considered part of the record in consideration of both [m]otions and this appeal." *Id*. at 23-24. She contends that since exhibits 2 through 5 were offered and received during the hearing on her motion to compel, then it was "properly submitted" for the court's consideration on Zapata's motion for summary judgment. *Id*. at 24. She argues that while she "appreciates the Supreme Court's clear rule of requiring evidence to be offered, marked and received by the [d]istrict [c]ourt to be considered for summary judgment, the [d]istrict [c]ourt blurred the lines when switching from [her] [s]econd [m]otion to [c]ompel to Zapata's [m]otion for [s]ummary [j]udgment during the [h]earing." *Id*. "It never became clear that a new record would be opened for the second motion within the [h]earing," and further, Cederburg "submitted this evidence electronically days before the hearing." *Id*.

As the colloquy set forth earlier demonstrates, the district court very clearly delineated between the two matters being heard on the same day. After the hearing on the motion to compel, the court asked, "Ready to proceed on the motion for summary judgment?" Zapata's counsel responded affirmatively and then offered exhibit 1, which was received without objection. The court then specifically asked Cederburg, "[D]o you have any evidence that you wish to offer on the motion for summary judgment?" And when counsel asked the court to take judicial notice of certain documents, the court explained it could not consider anything "in them as fact," that it could not "do that under judicial notice." There was then discussion about the court receiving exhibit 1 "as evidence both ways," after which the court asked if there was any other evidence. Cederburg's counsel replied, "No, Your Honor."

The district court clearly separated the two hearings that took place on January 17, 2024. The court properly concluded that only exhibit 1 was offered and received as evidence at the summary judgment hearing. Exhibits 2 through 5 were only offered and received at the hearing on Cederburg's second motion to compel. It was therefore proper for the court to only consider the pleadings and exhibit 1 when considering Zapata's motion for summary judgment. We now

consider whether the pleadings and exhibit 1 supported summary judgment in favor of Zapata as to Cederburg's counterclaim.

### (b) Prima Facie Case

Cederburg argues that even if this court concludes that the district court only received exhibit 1 at the summary judgment hearing, that we should nevertheless reverse the summary judgment order because Zapata failed to establish a prima facie case by producing enough evidence to show that he would be entitled to judgment if the evidence were uncontroverted at trial. She contends that the documents received in support of Zapata's motion for summary judgment fail to constitute a prima facie case. She then argues that if this court found she properly offered exhibits 2 through 5, then summary judgment was improper because even if Zapata met his prima facie burden, Cederburg also met her burden to prove that the existence of a material issue of fact. However, because we have already concluded that only exhibit 1 was received at the summary judgment hearing, we need only address her argument that Zapata failed to establish a prima facie case by producing enough evidence to show he was entitled to judgment as a matter of law as to Cederburg's counterclaim.

Notably, Cederburg only provides arguments regarding her slander/defamation claim, asserting that this claim should have survived summary judgment because (1) "Zapata voluntarily dismissed his replevin action," brief for appellant at 32, and (2) "defamatory material occurred outside the lawsuit," *id*. at 34. She conceded before the district court that a claim for malicious prosecution was not yet ripe for adjudication, and she does not make any specific arguments as to this claim in her initial brief. We will therefore not address it. She also does not make any specific argument related to the abuse of process claim, and we will therefore not address that claim either. See *Buttercase v. Davis*, 313 Neb. 1, 982 N.W.2d 240 (2022) (to be considered by appellate court, alleged error must be both specifically assigned and specifically argued in brief of party asserting error). Although Cederburg raises arguments related to malicious prosecution and abuse of process in her reply brief, we decline to address them. Errors not assigned in an appellant's initial brief are waived and may not be asserted for the first time in a reply brief. See *U.S. Pipeline v. Northern Natural Gas Co.*, 303 Neb. 444, 930 N.W.2d 460 (2019). The purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief. *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014).

We therefore limit our analysis to whether the district court properly dismissed Cederburg's claim for slander/defamation.

### (i) Slander/Defamation Claim

A claim of defamation requires (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Palmtag v. Republican Party of Neb.*, 315 Neb. 679, 999 N.W.2d 573 (2024). Libel is defamation where the defamatory words are written or printed; slander is defamation where the defamatory words are spoken. *Id*. Cederburg's counterclaim only made allegations of slander, alleging that Zapata "made defamatory and slanderous statements to third parties to the effect that [Cederburg] has engaged in forgery of title

to the [v]ehicle and theft of the [v]ehicle" and that the "statements made by [Zapata] to third parties constitute slander and defamation per se."

The district court initially relied on *Benes v. Matulka*, 182 Neb. 744, 157 N.W.2d 382 (1968), when addressing Cederburg's claim for slander. Zapata argues here, as he did before the trial court, that *Benes v. Matulka, supra*, established that an action for slander cannot be brought as a counterclaim to an action for conversion, even if the slander is related to the alleged conversion. He argued that it was not a proper counterclaim because it was a separate tort from the originally pled tort. The court agreed and concluded, "Any defamatory statements allegedly published by Zapata outside of the original action may be subject to a claim, but under Nebraska law, cannot be brought as a counterclaim and such counterclaim must be dismissed."

In *Benes v. Matulka, supra*, the Nebraska Supreme Court held that a claim for malicious prosecution and slander "[can] not be [pled] as a counterclaim in [a] conversion action." In that case, the plaintiff brought an action against the defendant for the alleged conversion of seven steers. The defendant denied the conversion and countered with claims that the plaintiff had slandered him and maliciously caused him to be prosecuted. The malicious prosecution was based on a charge of selling branded cattle without a bill of sale, stemming from the plaintiff's complaint that the defendant had stolen his cattle. The slander consisted of statements that the defendant had stolen the plaintiff's cattle. Upon motion by the plaintiff, the trial court struck the defendant's counterclaim. The defendant appealed, arguing that malicious prosecution and slander were valid claims because they arose out of the same transaction as the plaintiff's claim -- the alleged cattle conversion -- or were otherwise connected with the subject of the action.

The Nebraska Supreme Court held that the claim for slander and malicious prosecution could not be pled as a counterclaim in a conversion action. The Supreme Court cited a New York case, which stated:

> [T]he effort is here made to set up one tort, committed in January, against another, committed in September; the one being for an injury to property, and the other for an injury to the person. The circumstance that the deceit which constituted the former was the pretext or excuse for perpetrating the latter, establishes no such connection as to satisfy the statute, any more than if A. slanders B. on the 4th of July, and B. thrashes him for it at Christmas.

*Id.* at 745-46, 157 N.W.2d at 383-84 (quoting *Rothschild v. Whitman*, 132 N.Y. 472, 30 N.E. 858 (1892)).

Cederburg contends that the present case can be distinguished from *Benes v. Matulka, supra*, because in that case the original complaint had not been dismissed, while in the present case Zapata voluntarily dismissed his action without prejudice. Cederberg argues that because Zapata's action "no longer existed," her slander claim was permitted to "go forward." Brief for appellant at 33. She cites to Neb. Rev. Stat. § 25-603 (Reissue 2016), which states that "[i]n any case where a . . . counterclaim has been presented, the defendant shall have the right of proceeding to trial of his claim, although the plaintiff may have dismissed the action or failed to appear." Zapata acknowledges § 25-603, but he asserts that there are no Nebraska cases that hold "that the counterclaim can go forward even if the counterclaim was improper when it was filed." Brief for appellee at 16. We likewise found no authority to suggest that the dismissal of an original complaint makes an improper counterclaim proper, nor are we inclined to adopt such a view.

Further, even if *Benes v. Matulka, supra*, could be distinguished from the present case, the district court also alternatively concluded that Cederburg did not meet her burden of proof on the slander claim. We find this analysis more persuasive when considering the record before us. The district court stated:

Zapata's original claim is that he did not sign and complete the gift of a car to his granddaughter and that, therefore, his daughter, Cederburg, must have completed the transfer without his knowledge or participation. He brought an action against Cederburg for replevin and forgery. Assuming there was no evidence of forgery, a published allegation for forgery outside of judicial proceedings would be actionable for slander. However, Zapata's allegation was made *within* an action brought for replevin and is an integral part of that pleading. As such, it clearly falls within the privilege that attaches to statements made incident to judicial proceedings.

In support, the court cited to *Beckenhauer v. Predoehl*, 215 Neb. 347, 338 N.W.2d 618 (1983) (allegations in pleadings are privileged if material or pertinent to controversy in litigation; whether allegations in pleading are privileged is question of law). See, also, *Elbert v. Young*, 312 Neb. 58, 66, 977 N.W.2d 892, 900 (2022) ("[a]bsolute privilege attaches to defamatory statements made incident to, and in the course of, judicial or quasi-judicial proceedings if the defamatory matter has some relation to the proceedings"). An absolutely privileged communication is one for which, by reason of its character or the occasion on which it is made, no remedy exists in a civil action for defamation. *Id*.

The only potentially defamatory material in this record is what is contained in the pleadings, which is privileged and not subject to a slander claim. See *id*. Therefore, Zapata made a prima facie showing that he was entitled to judgment as a matter of law as to Cederburg's slander claim. However, Cederburg argues that there were defamatory statements made verbally outside of the lawsuit, which we address next.

### (ii) Defamatory Statements Outside Judicial Proceedings

Cederburg contends that her slander claim is based on defamatory statements that Zapata made outside of the judicial proceedings. She claims that her "slander/defamation claim had nothing to do with the pleadings, but rather Zapata's conversations with the . . . [p]olice and [her] grandmother, wherein Zapata swatted his own daughter's reputation." Brief for appellant at 35-36. She argues that because her second motion to compel was denied and the motion for summary judgment was granted, she "never had an opportunity to obtain or present evidence supporting her slander/defamation claim." *Id*. at 36. However, as previously addressed, she had an opportunity to present evidence regarding these other alleged statements, but she ultimately offered no evidence in opposition to Zapata's motion for summary judgment. Therefore, the only evidence the district court could rely upon was the evidence contained in exhibit 1. There is no evidence of defamatory statements made by Zapata outside the judicial proceedings contained in that evidence.

In summary, even when viewing the record in the light most favorable to Cederburg and drawing all reasonable inferences in her favor, the pleadings and admitted evidence show no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the

facts. Therefore, Zapata was entitled to judgment as a matter of law as to Cederburg's slander claim.

## 2. SECOND MOTION TO COMPEL AND MOTION TO RECONSIDER

### (a) Second Motion to Compel

Cederburg assigns as error that the district court erred in overruling her second motion to compel. In the motion, she claimed that the transcript of a recorded conversation between Zapata and her contradicted Zapata's discovery responses and his deposition testimony.

The district court denied the motion on the basis that "there [were] no remaining claims for which discovery [could] be ordered, much less compelled." On appeal, however, Cederburg argues that granting the motion "would have allowed for the presentation of additional evidence" to defeat Zapata's motion for summary judgment. Brief for appellant at 32. We affirm the district court's denial of Cederburg's second motion to compel but do so on different grounds, as discussed next. See *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017) (when record demonstrates decision of trial court is correct, although such correctness is based on different grounds from those assigned by trial court, appellate court will affirm).

Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion. *Timothy L. Ashford, PC LLO v. Roses*, 313 Neb. 302, 984 N.W.2d 596 (2023). We have recognized that it is difficult to show that a party has been prejudiced by a discovery order, or that the question is not moot; and the harmless error doctrine, together with the broad discretion the discovery rules vest in the trial court, will bar reversal save under very unusual circumstances. See *Brozovsky v. Norquest*, 231 Neb. 731, 437 N.W.2d 798 (1989).

The gist of Cederberg's argument is that some of the statements Zapata allegedly made during the recorded conversation between him and Cederberg on January 11, 2023, contradicted the responses Zapata gave in his discovery responses and in his deposition. As noted by the district court's comments set forth previously, Cederburg was saying that she "think[s] she know[s]" which statement "is the truth and which one isn't, and [she] want[s] [the court] to pick the one that's the truth, and make him say it is." We agree with the trial court's comments at the hearing that to the extent Zapata made statements during the recorded conversation that were inconsistent with his responses to discovery and in his deposition, those were matters to be addressed at trial or presented as evidence in opposition to Zapata's motion for summary judgment. A motion to compel discovery is not the mechanism to employ when a party seeks to challenge a party's inconsistent statements. The problem for Cederburg was not that she needed a second motion to compel, but that she needed to offer the evidence she apparently already had to support the actions brought in her counterclaim. To the extent the recorded statements may have raised a material issue of fact to support Cederburg's resistance to Zapata's motion for summary judgment, it was not offered as evidence during the hearing on the motion for summary judgment, which we have previously addressed. There was no abuse of discretion by the district court in denying the second motion to compel.

(b) Motion to Reconsider

Cederburg assigns that the district court erred in overruling her motion to reconsider. A trial court's decision to grant or deny a motion to reconsider is reviewed for an abuse of discretion. *County of Douglas v. Nebraska Tax Equal. & Rev. Comm.*, 296 Neb. 501, 894 N.W.2d 308 (2017).

Cederburg only briefly addresses this alleged error in the "Conclusion" section of her brief. Brief for appellant 42. She states that the district court "had an opportunity to correct the aforementioned issues upon [her] Motion to Reconsider and failed to do so." *Id*. She argues that the court denied her motion "without providing any basis or reasoning for doing so." *Id*. She contends she should be "allowed her day in court to confront Zapata, a career litigant who wields the judicial system like a sword to attack and terrorize his own family," and therefore this court should reverse the trial court's decision sustaining the summary judgment motion and denying her second motion to compel. *Id*.

As noted earlier, Cederburg's position in support of her motion for rehearing was that the district court erred in concluding that she did not submit any evidence in support of the actions in her counterclaim. She referred to her index of evidence in opposition to Zapata's motion for summary judgment, which included a transcript of the recorded conversation. We have already addressed the issue related to exhibits 2 through 5 not being properly offered at the hearing on the motion for summary judgment and find no abuse of discretion by the district court in denying her motion for reconsideration.

Cederburg also expressed concern at the hearing on her motion for reconsideration, and again on appeal, that the district court's order did not say that the dismissal was without prejudice. She contends that her counterclaim should have been dismissed without prejudice because it was dismissed on procedural grounds rather than substantive grounds.

It is true that the final order in this case did not specify whether it was dismissed with or without prejudice. In the argument section of her brief, Cederburg requests this court to remand the case for clarification on whether the dismissal of her claims was made with or without prejudice. However, she did not assign this as error in the assignments of error section of her brief. As such, we will not address it. See *Buttercase v. Davis,* 313 Neb. 1, 982 N.W.2d 240 (2022) (to be considered by appellate court, alleged error must be both specifically assigned and specifically argued in brief of party asserting error).

## VI. CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of Zapata as to the actions raised in Cederburg's counterclaim.

AFFIRMED.